## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ANDRES RODRIGUEZ TORRES,

      Petitioner,

v.                             Case No. 8:21-cv-1656-CEH-NHA

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## **ORDER**

Petitioner, a Florida prisoner, initiated this action by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1). Respondent filed a response opposing the petition (Doc. 9) and exhibits (Doc. 9-2). Upon consideration, the petition will be denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

Petitioner was charged by Information with second-degree murder and kidnapping (Doc. 9-2, Ex. 3).[1] The jury found Petitioner guilty as charged (*Id.*, Ex. 8). He was sentenced to concurrent terms of 55 years in prison (*Id.*, Ex. 9 at 1221; Ex. 10).[2] The convictions and sentences were affirmed on appeal (*Id.*, Ex. 21).

---

[1] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

[2] The Judgment was subsequently amended concerning the fines and costs assessed against

Petitioner filed a motion to correct an illegal sentence under Florida Rule of Criminal Procedure 3.800(a), claiming the evidence was insufficient to support his convictions (*Id.*, Ex. 23). Recognizing the claim was not cognizable on collateral review, the state circuit court denied the motion. (*Id.*, Ex. 24).

Petitioner filed a second Rule 3.800(a) motion alleging his sentences exceed the applicable statutory maximum under section 775.087, Florida Statutes ("10-20-Life") (*Id.*, Ex. 26 at 1417-1420). The circuit court denied the motion, noting that Petitioner's 55-year sentences were not imposed under 10-20-Life, but "separate statutory authority authorizing term-of-year[s] sentences up to life for each offense." (*Id.*, Ex. 26 at 1422-1423). The appellate court affirmed the denial of the motion without explanation (*Id.*, Ex. 27).

Petitioner moved for post-conviction relief under Rule 3.850, Florida Rules of Criminal Procedure, arguing (1) a due process and equal protection violation, (2) ineffective assistance of trial counsel, and (3) cumulative error (*Id.*, Ex. 30 at 1453-1464). The circuit court dismissed Ground One and denied Grounds Two and Three (*Id.*, Ex. 30 at 1465-1467). The appellate court affirmed the denial of relief without explanation (*Id.*, Ex. 32).

Petitioner filed a third motion under Rule 3.800 asserting that his sentences violated double jeopardy (*Id.*, Ex. 37 at 1528-1531). The circuit court dismissed the

Petitioner (*Id.*, Exs. 15, 16).

motion (*id.*, Ex. 37 at 1533-1536), and the appellate court affirmed without explanation (*Id.*, Ex. 38).

Petitioner filed his federal petition in this Court (Doc. 1) in which he alleges seven claims for relief.

## II. GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

A. Standard of Review Under the AEDPA

Under the AEDPA, habeas relief may not be granted regarding a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

4

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

B. Exhaustion and Procedural Default

The writ of habeas corpus cannot be granted unless the petitioner has exhausted all available state court remedies. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Lucas v. Sec'y, Fla. Dep't of Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012) (citing 28 U.S.C. § 2254(b), (c)). Exhausting state remedies requires a petitioner to "fairly present" his claims in each appropriate state court "thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) and *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)). Moreover, to properly exhaust a claim, "the [petitioner] must have

presented his claims in state court in a procedurally correct manner." *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995)

Under the procedural default doctrine, a claim raised in a federal habeas petition is barred from review if the claim was not properly raised in state court and "the court to which the petitioner would be required to present [the] claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1. To avoid a procedural default, a petitioner must show "either cause for and actual prejudice from the default or fundamental miscarriage of justice from applying the default." *Lucas*, 682 F.3d at 1353; *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).

C. Ineffective Assistance of Counsel

Petitioner alleges ineffective assistance of trial counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires showing deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*.

6

Petitioner must show that counsel's alleged error prejudiced the defense, because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

## III. ANALYSIS

**GROUND ONE: State Court Conviction As To Second Degree Murder Was Fundamentally Defective Where The Essential Elements Required To Prove A Completed Act Were Insufficient To Prove Petitioner Guilty Beyond A Reasonable Doubt. State Court's Denial of Petitioner's Motion For Judgment Of Acquittal Was In Error. In Violation Of Due Process And A Fair Trial Provided By And Through The United States Constitution, Amendments 5, 6, & 14. (Doc. 1 at 5-6)**

Petitioner contends that the evidence was insufficient to support his conviction for second-degree murder. He argues an essential element of second-degree murder is proof that the fatal act was done out of ill will, hatred, spite, or an evil intent, and the evidence was not sufficient to establish these elements.

Petitioner raised this claim in his Initial Brief on direct appeal (Doc. 9-2, Ex. 18 at 1310-1316). The silent affirmance of the appellate court (*id.*, Ex. 21) is an adjudication on the merits owed deference under Section 2254(d). *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

7

When reviewing an insufficiency of the evidence claim in a habeas petition, a federal court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Owen v. Sec'y, Dep't of Corr.*, 568 F.3d 894, 918 (11th Cir.2009). The court must assume that the jury resolved any evidentiary conflicts in favor of the prosecution, and the court must defer to that resolution. *Jackson*, 443 U.S. at 326; *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir.2001).

For second-degree murder, the prosecution had to prove: (1) the victim is dead; (2) the death was caused by the criminal act or acts of Petitioner; and (3) there was an unlawful killing of the victim by an act immediately dangerous to another and demonstrating a depraved mind without regard for human life. Fla. Stat. § 782.04(2) (2013). To prove a depraved mind, the State must produce evidence showing that a defendant acted with "ill will, hatred, spite, or an evil intent." *Peoples v. State*, 251 So. 3d 291, 302 (Fla. 1st DCA 2018).

At trial, Luis Leyton testified that after he, Petitioner, and the victim, Eddy Vasquez, had been out at clubs with others and finished eating at a restaurant, they were walking to Petitioner's apartment when Petitioner suddenly pulled out a gun and fired it into the air (Doc. 9-2, Ex. 7 at 629-33). That made Vasquez upset, and he asked Petitioner whether he thought he was "tough" because he had "a gun." (*Id.*, Ex. 7 at 634). Petitioner responded by telling Vasquez "I'll do whatever [I] like" and

8

"what[] you going to do?" (*Id.*). He also pointed the gun at Vasquez and poked him with it (*Id.*, Ex. 7 at 634-35). After the men walked a little further, Petitioner again pulled out the gun and poked Vasquez with it (*Id.*, Ex. 7 at 635-36).

Vasquez asked Leyton for his phone number, stated he did not want to go to Petitioner's apartment, said Petitioner was no longer his friend because he pointed a gun at him, and announced he was going home (*Id.*, Ex. 7 at 639). As Vasquez was walking toward his car, Petitioner shot him two times (*Id.*). Leyton testified Vasquez had no weapons and never threatened Petitioner in any manner (*Id.*, Ex. 7 at 636, 639-40).

Viewed in the light most favorable to the prosecution, Leyton's testimony was competent, substantial evidence supporting the conviction for second-degree murder. His testimony shows there was ill-will between Petitioner and Vasquez. Vasquez was upset because Petitioner fired a gun, poked him with the gun, and taunted him. Petitioner may have felt slighted by Vasquez's comments that he thought he was a "tough" guy and that they were no longer friends. And a reasonable person would understand that shooting another person would lead to death or great bodily harm. Thus, Petitioner's act of shooting Vasquez, coupled with the evidence indicating animosity and ill-will generated from their actions and comments to each other shortly before the shooting, support the depraved mind element of a second-degree murder conviction. Therefore, there was sufficient evidence, when taken in a light most favorable to the prosecution, to allow the jury to determine that Petitioner acted

with a depraved mind. *See Peoples*, 251 So. 3d at 303 (defendant's use of a deadly weapon to stab the victim was an act "which itself could be sufficient to infer the requisite intent" to support a second-degree murder conviction).

Petitioner fails to show that the state appellate court's rejection of this claim was contrary to or an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts. Accordingly, Ground One warrants no relief.

**GROUND TWO: State Court Conviction As To Kidnapping Was Fundamentally Defective Where The Essential Elements Required To Prove A Completed Act Were Insufficient To Prove Petitioner Guilty Beyond A Reasonable Doubt. State Court's Denial of Petitioner's Motion For Judgment Of Acquittal Was In Error. In Violation Of Due Process And A Fair Trial Provided By And Through The United States Constitution, Amendments 5, 6, & 14. (Doc. 1 at 7-8)**

Petitioner contends that the evidence was insufficient to support his conviction for kidnapping. He argues an essential element of kidnapping in his case was proof he intended to commit witness tampering, and the evidence was not sufficient to establish this element.

Petitioner raised this claim in his Initial Brief on direct appeal (Doc. 9-2, Ex. 18 at 1316-1320). The silent affirmance of the appellate court (*id.*, Ex. 21) is an adjudication on the merits owed deference under Section 2254(d). *Richter*, 562 U.S. at 99.

For kidnapping, the prosecution had to prove that Petitioner: (1) forcibly or by threat confined, abducted, or imprisoned Leyton against his will; (2) had no lawful

10

authority to do so; and (3) acted with intent to commit or facilitate the commission of tampering with a witness (Doc. 9-2, Ex. 7 at 1059-1060). *See* Fla. Stat. § 787.01(1)(a)2. (2013). And for witness tampering, the prosecution had to prove that Petitioner: (1) knowingly used or attempted to use intimidation or physical force against Leyton or threatened or attempted to threaten Leyton; and (2) did so with intent to cause or induce Leyton to hinder, delay or prevent the communication to a law enforcement officer of information related to the commission or possible commission of an offense. (Doc. 9-2, Ex. 7 at 1060). *See* Fla. Stat. § 914.22(1)(d) (2013).

Testimony at trial demonstrated that immediately after Petitioner shot Vasquez, Leyton walked over to Vasquez. Petitioner then approached Leyton, grabbed him around the head and neck area, and pulled him away (Doc. 9-2, Ex. 7 at 499, 507, 641). Petitioner told Leyton they needed to leave and go to his apartment (*Id.*, Ex. 7 at 641). When Leyton responded that he wanted to go home, Petitioner refused to release his grip on Leyton and told him "let's go." (*Id.*, Ex. 7 at 641-42). Leyton felt compelled to go with Petitioner because he feared for his life, since Petitioner had a gun and shot Vasquez (*Id.*, Ex. 7 at 642).

When they arrived at Petitioner's apartment, Leyton pleaded with Petitioner to let him go home and told him he would not contact the police (*Id.*, Ex. 7 at 643). Petitioner said "no" and told Leyton he needed to go inside his apartment (*Id.*). Petitioner told Leyton to sit on the couch, and Leyton could see Petitioner still had

11

his gun (*Id.*, Ex. 7 at 643-44). Petitioner then told Leyton not to worry, to relax, and that nothing would happen to him (*Id.*, Ex. 7 at 644). Petitioner then told him, "you can be the only one alive tonight so you can tell the story of what happened tonight, because they're coming for me, the police are coming for me." (*Id.*). Petitioner told Leyton to go to sleep (*Id.*). When Leyton saw Petitioner had fallen asleep on the couch, he quietly walked out of the apartment and ran to his friend's house (*Id.*, Ex. 7 at 644-45).

Viewed in the light most favorable to the prosecution, the testimony was competent, substantial evidence supporting the conviction for kidnapping. A jury could reasonably determine that Petitioner used force and threat to confine Leyton against his will. Leyton twice told Petitioner he wanted to go home, but Petitioner grabbed Leyton around the head and neck while armed with his gun and told Leyton he had to go to and inside his apartment. While inside the apartment, Petitioner told Leyton to sit on the couch, tried to convince him he would not be harmed, and told him to go to sleep. And Petitioner had no legal authority to detain Leyton.

A jury also could reasonably determine Petitioner acted intending to commit witness tampering. Petitioner intimidated and used force against Leyton by wrapping his arm around Leyton's head and neck while holding a gun and pulling Leyton away from the scene of the shooting and toward his apartment. And a jury could reasonably infer that the reason Petitioner forced Leyton to go to his apartment was to prevent or delay Leyton from reporting to law enforcement that he saw Petitioner

shoot Vasquez. Moreover, a jury could reasonably conclude that Petitioner's intent when he said, "you can be the only one alive tonight so you can tell the story of what happened tonight, because they're coming for me, the police are coming for me" was to pacify Leyton for the present time rather than to ensure Leyton was available as a witness.

Petitioner fails to show that the state appellate court's rejection of this claim was contrary to or an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts. Accordingly, Ground Two warrants no relief.

**GROUND THREE: The Trial Court Erred In Denying A Motion For Mistrial Where The State Intentionally Elicited Information Of A Crime Not Charged In Contravention Of An Order Issued In Limine. In Violation Of Due Process And A Fair Trial Provided By And Through The United States Constitution, Amendments 5, 6, & 14.**

Petitioner contends he was denied due process and a fair trial when the state trial court denied his motion for mistrial after the State violated the order granting his pre-trial motion in limine prohibiting any inference that his possession of the gun was itself illegal or a criminal act. He asserts the State violated the order when it asked Detective Tower whether Petitioner had a concealed weapons permit, and Detective Tower answered "No." He argues the question and answer together were prejudicial because it implied that since his possession of the gun was illegal, any use

13

of the gun was likewise illegal. Moreover, he states this prejudice was compounded by the prosecutor's statements in closing calling the gun "concealed."

Petitioner raised this claim in his Initial Brief on direct appeal (Doc. 9-2, Ex. 18 at 1320-1328). The silent affirmance of the appellate court (*id.*, Ex. 21) is an adjudication on the merits owed deference under Section 2254(d). *Richter*, 562 U.S. at 99.

The denial of the claim was reasonable. "A trial court's decision denying a motion for a mistrial justifies habeas corpus relief only if it was error so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause." *Vega v. Dir., TDCJ-CID*, 2015 WL 5915001, at *6 (E.D. Tex. Sept. 21, 2015) (citing *Hernandez v. Dretke*, 125 F. App'x 528, 529 (5th Cir.2005)). The state appellate court could reasonably conclude that the prosecutor's single question about whether Petitioner had a concealed weapons permit did not render the trial fundamentally unfair. *See Lisenba v. California*, 314 U.S. 219, 236 (1941) (holding that in "a criminal trial, denial of due process" occurs when the "absence of [fundamental] fairness fatally infected the trial"). To constitute a denial of fundamental fairness, the evidence erroneously admitted at trial must be material in the sense of a "crucial, critical, highly significant factor." *Jameson v. Wainwright*, 719 F.2d 1125, 1127 (11th Cir. 1983). The prosecutor's question about whether Petitioner had a concealed weapons permit was not a critical factor in the case. Rather, the critical issue was whether Petitioner used the gun in self-defense.

14

Viewing the evidence in its entirety, the prosecutor's question did not so infuse the trial with unfairness as to deny Petitioner fundamental fairness and due process. Considering the strong evidence of Petitioner's guilt, the prosecutor's question regarding the concealed weapons permit had no "substantial and injurious effect" on the jury's verdict. *See Brecht v. Abrahamson*, 507 U. S. 619, 623 (1993) (a constitutional error will provide habeas relief only when a petitioner shows actual prejudice in that "the error 'had substantial and injurious effect or influence in determining the jury's verdict.'"). Moreover, the prosecutor's question was isolated, and the judge offered a curative instruction which was rejected by Petitioner (Doc. 9-2, Ex. 7 at 899). *See United States v. Guinn*, 460 F. App'x 888, 889 (11th Cir. 2012) ("In determining whether a prosecutor's conduct prejudicially affected the defendant's substantial rights by changing the trial's outcome, we consider: (1) whether the challenged comments had a tendency to mislead the jury or prejudice the defendant, (2) whether the comments were isolated or extensive, (3) whether the comments were deliberately or accidentally placed before the jury, and (4) the strength of the proof establishing the guilt of the defendant." (citing *United States v. Lopez*, 590 F.3d 1238, 1256 (11th Cir. 2009))). *Cf. United States v. Nosovsky*, 269 F. App'x 915, 917 (11th Cir. 2008) ("A defendant may not request a mistrial on appeal when he refused a curative instruction that would have alleviated any need for a mistrial." (citation omitted)).

Petitioner fails to show that the state appellate court's rejection of this claim was contrary to or an unreasonable application of clearly established federal law or

15

was based on an unreasonable determination of the facts. Accordingly, Ground Three warrants no relief.

**GROUND FOUR: Consideration Of Improper Evidence At Sentencing Was Fundamental Error. In Violation Of Due Process And A Fair Trial Provided By And Through The United States Constitution, Amendments 5, 6, & 14. (Doc. 1 at 12-13)**

Petitioner contends the trial court's consideration of and reliance on "improper" victim impact evidence, and Petitioner's lack of remorse and maintaining his innocence, to enhance his sentence violated his due process rights and amounted to "fundamental error."[3] He asserts that during sentencing the State presented two letters from Vasquez's family that included the following "improper" statements:

- The event was a "senseless act of violence."

-   The event was "an admitted inexcusable act of disregard for human life by a person who called himself Eddy's friend."

-   This was a "senseless crime."

---

[3] Petitioner's contention that the trial court's consideration of this information during sentencing constituted "fundamental error" is an issue of state law that provides no basis for federal habeas relief. *See Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1299 (11th Cir. 2017) ("[T]he fundamental error question is an issue of state law, and state law is what the state courts say it is. . . .[I]t is not a federal court's role to examine the propriety of a state court's determination of state law." (citations omitted)).

- "As to Andres claiming it was self-defense, there was no self-defense about it. Andres showed no mercy when he took my son's life away. Andres gave my son a death sentence while giving Eddy's family and friends a life sentence."

- "Your Honor, I hope you give Andres the sentence he deserves for this vicious crime."

- "Your Honor, please ensure that our system works to give Eddy justice, his mother his father, his two brothers, the justice that is deserved in this situation."

- "Please send a message to our community that taking another person's life, no matter the circumstances, will not be tolerated and will be punished to the full extent of the law."

(Doc. 1 at 12).

Petitioner raised this claim in his Initial Brief on direct appeal (Doc. 9-2, Ex. 18 at 1328-1335). The silent affirmance of the appellate court (*id.*, Ex. 21) is an adjudication on the merits owed deference under Section 2254(d). *Richter*, 562 U.S. at 99.

Concerning the victim impact information, Florida law allows a court to consider such information when fashioning a sentence. *See, e.g., Dickie v. State*, 216 So. 3d 35 (Fla. 2d DCA 2017) (a trial court may consider victim impact statements in fashioning defendant's sentence). And consideration of victim impact statements by a court when fashioning a sentence does not violate due process. *See, e.g., United States v. Christensen*, 732 F.3d 1094, 1102, 1106 (9th Cir. 2013) (district court may

17

consider unsworn victim impact statements at sentencing; due process violated only when sentence is imposed based on materially false or unreliable information).

Regarding Petitioner's lack of remorse and assertion of innocence, the trial judge stated those matters would not be considered when fashioning Petitioner's sentence (Doc. 9-2, Ex. 9 at 1189-1190). Moreover, there is nothing in the record that indicates Petitioner's lack of remorse or his maintaining his innocence affected his sentence. And even if the trial court had considered Petitioner's lack of remorse and refusal to accept responsibility, the court was permitted to do so because Petitioner voluntarily spoke during allocution (Doc. 9-2, Ex. 9 at 1199-1200). *See Davis v. State*, 332 So. 3d 970, 978 (Fla. 2021) (holding that "when a defendant voluntarily chooses to allocute at a sentencing hearing, the sentencing court is permitted to consider the defendant's freely offered statements, including those indicating a failure to accept responsibility."); *Davis v. State*, 268 So. 3d 958, 961 (Fla. 1st DCA 2019) ("We hold that a trial judge does not violate a defendant's due process rights by merely considering the defendant's lack of remorse or refusal to accept responsibility."); *United States v. Tomey*, 783 F. App'x 832, 848 (11th Cir. 2019) ("Because Tomey freely and voluntarily chose to address the court during allocution without pressure from the court, the court was permitted to consider the content of Tomey's voluntary statements, including that he had expressed no remorse, in crafting a sentence.").

Petitioner fails to show that the state appellate court's rejection of this claim was contrary to or an unreasonable application of clearly established federal law or

18

was based on an unreasonable determination of the facts. Accordingly, Ground Four warrants no relief.

**GROUND FIVE: The Trial Court Erred By Allowing Prosecutorial Misconduct During Trial. In Violation Of The U.S. Constitution, Amendments 5, 6, & 14. (Doc. 1 at 13-14)**

Petitioner asserts he was denied equal protection, due process, a fair trial, and his right to confront the witnesses against him when, during cross-examination, the prosecutor asked him, "Well you had the advantage that no other witnesses had today, and you got to listen to everyone else's testimony?" and, after defense counsel objected, the trial court said, "That's sustained. I mean, you can ask him that question if you want." Petitioner argues the prosecutor's question unfairly suggested Petitioner was not credible and was tailoring his testimony to the testimony of other witnesses. He also argues the court's statement "threw the weight of the Bench behind the prosecutor's improper question."

Respondent correctly argues this claim is barred from review because it is procedurally defaulted (Doc. 9 at 36-37). It could have been, but was not, raised on direct appeal (*See* Doc. 9-2, Ex. 18). When Petitioner raised the claim in his Rule 3.850 motion (*id.*, Ex. 30 at 1459-1460), the state post-conviction court dismissed it as procedurally defaulted because he attempted to raise the claim for the first time in a manner not permitted by the Florida courts (*Id.*, Ex. 30 at 1465). *See Bruno v. State*, 807 So. 2d 55, 63 (Fla. 2001) ("A claim of trial court error generally can be raised on direct appeal but not in a rule 3.850 motion. . . ."). "[I]f 'it fairly appears that the

19

state court rested its decision primarily on federal law,' this Court may reach the federal question on review unless the state court's opinion contains a 'plain statement that its decision rests upon adequate and independent state grounds.'" *Harris v. Reed*, 489 U.S. 255, 261 (1989) (quoting *Michigan v. Long*, 463 U.S. 1032, 1042 (1983)).

In dismissing Petitioner's claim, the state post-conviction court issued a "plain statement" applying the independent and adequate state procedural bar. *See LeCroy v. Sec'y, Fla. Dep't of Corr.*, 421 F.3d 1237, 1260 (11th Cir. 2005) (3.850 court's refusal to consider the defendant's issues that could have been raised on direct appeal as procedurally barred rested on an independent and adequate state ground that precludes federal habeas consideration of this issue). The state appellate court's affirmance without discussion (Doc. 9-2, Ex. 32) is presumed to have been based on that procedural default rule. *See Harmon v. Barton*, 894 F.2d 1268, 1273 (11th Cir. 1990) (A state appellate "court's per curiam affirmance of the trial court's ruling explicitly based on procedural default is a clear and express statement of its reliance on an independent and adequate state ground which bars consideration by the federal courts."). Consequently, this claim is procedurally defaulted because "it is apparent that the Florida courts would now refuse to hear this claim ...." *Smith*, 572 F.3d at 1342. Because Petitioner shows neither cause and prejudice nor manifest injustice to overcome the procedural default, review of Ground Five is procedurally barred.

**GROUND SIX: Counsel Was Ineffective In Failing To Ask For Curative Instructions Or Move For A Mistrial After The Trial Court's Imprimatur Of The Improper Question. In Violation Of The U.S. Constitution, Amendments 5, 6, & 14. (Doc. 1 at 15-16)**

During cross-examination of Petitioner, the prosecutor stated, "Well, you had the advantage that no other witnesses had today, and you got to listen to everyone else's testimony?" (Doc. 9-2, Ex. 7 at 981). Defense counsel objected, and after sustaining the objection the trial court said, "I mean, you can ask him that question if you want." (*Id.*, Ex. 7 at 982). The prosecutor then asked Petitioner, "You heard Mrs. Martinez -- Ms. Martinez testify about when she saw you 1:00 to 1:30, correct?" (*Id.*). Petitioner answered, "I heard." (*Id.*).

Petitioner asserts the prosecutor's questions implied Petitioner was tailoring his testimony to the testimony presented by the other witnesses, and Petitioner's testimony was less credible than the State's witnesses because he had the advantage of hearing the testimony from the State's witnesses before testifying. He contends counsel was ineffective in failing to either request a curative instruction that stated he had a constitutional right to attend the trial and confront the witnesses against him or move for a mistrial.[4]

---

[4] Petitioner also alleges counsel was ineffective in failing to rehabilitate his credibility (Doc. 1 at 15). However, this claim is procedurally defaulted because he failed to raise it in his Rule 3.850 motion (Doc. 9-2, Ex. 30 at 1453-1464). Although Petitioner raised the issue in his Initial Brief on appeal from the denial of the Rule 3.850 motion (*Id.*, Ex. 31 at 1498), it is a firmly established and regularly followed procedural rule in Florida that an appellate court will not consider a claim raised for the first time on appeal. *See Galvez v. Ramos*, 941 So. 2d 475, 477 (Fla. 3d DCA 2006) ("Generally, an appellate court cannot address claims raised

21

This claim was raised in state court as Ground Two of Petitioner's Rule 3.850 motion (Doc. 9-2, Ex. 30 at 1460-1462). In denying the claim, the state post-conviction court stated:

> In ground two, Defendant alleges that he received ineffective assistance of counsel. A legally sufficient claim of ineffective assistance of counsel must allege two things: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The movant has the burden to identify specific acts or omissions that were deficient and to demonstrate prejudice. *Hoskins v. State*, 75 So. 3d 250, 253-4 (Fla. 2011). An attorney is deficient when his or her performance is unreasonable under prevailing professional norms. *Strickland*, 466 U.S. at 688. To show prejudice, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

> Defendant claims that counsel was ineffective for failing to move for a curative instruction or a mistrial after the improper comments discussed in ground one. He argues that this question bolstered the prosecution witnesses at the expense of his right to be present at the trial. He alleges that there is a reasonable probability that the result of the proceeding would have been different but for counsel's deficiency.

> Defendant is not entitled to relief because a motion for mistrial would have been meritless [sic] and a curative instruction would not have changed the outcome of the trial." A motion for a mistrial should only be granted when an error is so prejudicial as to vitiate the entire trial." *England v. State*, 940 So. 2d 389, 402 (Fla. 2006). No such prejudicial error occurred in this case. Defense counsel objected to the prosecutor making a statement, which was not, in fact, a question. The

---

for the first time on appeal.") (citation omitted); *Doyle v. State*, 526 So.2d 909, 911 (Fla.1988) (holding claim procedurally barred because it was not presented to the state post-conviction court in defendant's rule 3.850 motion and could not be raised for the first time on appeal of the order denying relief). Because Petitioner fails to show cause and prejudice for the default or actual innocence, the claim is procedurally barred from review. And even if the claim were not procedurally barred, it would fail on the merits as vague and conclusory.

Court sustained the objection but noted that counsel could ask it as a question. (*Ex. B: Trial Transcript*, 887-888). The prosecutor then asked the question, which was entirely proper. *See Portuondo v. Agard*, 529 U.S. 61, 73 (2000) (holding that the State may remark on a defendant's opportunity to hear the testimony of other witnesses). Accordingly, the jury could hear and consider that Defendant was present and heard the testimony of other witnesses. The fact that the State improperly stated this before asking Defendant it as a question did not have enough prejudice to vitiate the entire trial or to give a reasonable probability of a different outcome. The objected to statement was, in fact, inconsequential. Accordingly, it would not have resulted in a mistrial had counsel moved for one. Counsel cannot be deficient for making a meritless motion. *Thompson v. State*, 759 So. 2d 650, 665 (Fla. 2000). Nor would it have changed the outcome of the trial had counsel requested a curative instruction. As counsel was not deficient and Defendant was not prejudiced, ground two is denied.

(*Id.*, Ex. 30 at 1466). The state appellate court affirmed without a written opinion

(*Id.*, Ex. 32 at 1513).

The rejection of this claim was reasonable. A prosecutor's comments or questions calling the jury's attention to the fact that a defendant had the opportunity to hear other witnesses testify and to tailor his testimony, does not unlawfully burden a defendant's right to be present at trial, to be confronted with witnesses, or to testify on his own behalf, nor does it violate his right to due process. *See Portuondo v. Agard*, 529 U.S. 61, 65–74 (2000). Accordingly, any motion for a mistrial or request for a curative instruction would have been meritless. Trial counsel does not render ineffective assistance for failing to raise a meritless motion. *See Freeman v. Atty. Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim[.]") (citation omitted).

23

Petitioner has failed to demonstrate that the state courts' resolution of this claim was an unreasonable application of *Strickland* or based on an unreasonable determination of the facts. Accordingly, Ground Six warrants no relief.

**GROUND SEVEN: Defendant Should Be Entitled To A New Trial Based On The Cumulative Effect Of Ineffective Assistance Of Counsel. (Doc. 1 at 17)**

Petitioner contends that the cumulative effect of trial counsel's alleged errors denied him his right to a fair trial. This claim was raised in state court as Ground Three of Petitioner's Rule 3.850 motion (Doc. 9-2, Ex. 30 at 1463). In denying the claim, the state post-conviction court stated:

> In ground three, Defendant alleges that he is entitled to relief based on the cumulative effect of ineffective assistance of counsel. Defendant has only alleged one claim of ineffective assistance of counsel (and that is the only cognizable claim raised in his motion). Further, where "individual claims are procedurally barred or without merit, the claim of cumulative error must fail." *Griffin v. State*, 866 So. 2d 1, 22 (Fla. 2003). Accordingly, as the Court has denied Defendant's other claims, ground three must be denied.

(*Id.*, Ex. 30 at 1467). The state appellate court affirmed without a written opinion (*Id.*, Ex. 32 at 1513).

The rejection of this claim was reasonable. "Under the cumulative-error doctrine, a sufficient agglomeration of otherwise harmless or nonreversible errors can warrant reversal if their aggregate effect is to deprive the defendant of a fair trial." *Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1284 (11th Cir. 2014). Here, because Petitioner presents a single claim of ineffective assistance, and the claim warrants no relief, there are no individual errors of ineffective assistance to

24

accumulate. Thus, his cumulative-error claim necessarily fails. *See Otero v. Sec'y, Dep't of Corr.*, 2022 WL 4095069, at *8 (M.D. Fla. Sept. 7, 2022) ("Because ground one is procedurally barred from federal review and ground two lacks merit, Otero proves no error to accumulate to show cumulative prejudicial effect.").

Petitioner has failed to demonstrate that the state courts' resolution of this claim was contrary to clearly established federal law or based on an unreasonable determination of the facts. Ground Seven therefore warrants no relief.

Accordingly:

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The Clerk of Court is directed to enter judgment against Petitioner and close this case.

2. This Court should grant an application for a Certificate of Appealability (COA) only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He cannot make this showing. Accordingly, a COA is **DENIED**. And because Petitioner is not entitled to a COA, he may not proceed on appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida on August 28, 2024.

Charlene Edwards Honeywell
United States District Judge

Copies to: Petitioner, *pro se*
              Counsel of Record